# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

EARL SIDNEY DAVIS,                        )
                                          )
    Plaintiff,                        )
                                          )
    v.                                )   09-CV-3336
                                          )
LARRY J. PHILLIPS,                        )
TARRY WILLIAMS,                           )
SHON C. ORRILL,                           )
RICHARD A. LOGAN,                         )
SETH C. WESSEL,                           )
GEORGE LAY,                               )
SANDRA SIMPSON,                           )
GUY GROOT,                                )
JAMES HAAGE,                              )
JANE DOES 1-2, and                        )
DONALD G. DANIELS.                        )
                                          )
    Defendants.                       )

## OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

Plaintiff Earl Sidney Davis, proceeding pro se, is a civil detainee at the

Rushville Treatment and Detention Facility ("Rushville").  Now before this Court

is a supplemental motion for summary judgment ("Motion") by Defendants

George Lay and Seth C. Wessel.  Defendants filed this Motion on Friday, March

30, 2012 in response to Plaintiff's claim that Defendants violated his constitutional

rights by laughing and watching while they forced Plaintiff to urinate in his restraints.  After a careful consideration of the record, the Court concludes that it cannot grant summary judgment to Defendants because there remain material issues of fact.  The Court further concludes that Defendants are not entitled to qualified immunity because a reasonable officer would have known that security procedures used to harass and humiliate violate clearly established constitutional rights.  Accordingly, Defendants' Motion must be denied.

## LEGAL STANDARD

In reviewing a motion for summary judgment, the Court will grant summary judgment when the moving party demonstrates it is entitled to judgment as a matter of law because "there is no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a).  In the record, the Court must include the reasons for granting or denying summary judgment, as well as whether any material issues of fact exist.  Id.  A genuine dispute as to a material fact exists when a reasonable jury could find in favor of either party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

Although "[t]he movant has the burden of showing that there is no genuine issue of fact, . . . the [non-movant] is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict."  Id. at 256.  To prove the absence of a material fact, the moving party may cite to "particular

materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1).  The movant may also demonstrate the non-movant's failure to produce sufficient admissible evidence to support the factual allegations.  Id.  To survive summary judgment, the non-movant may not simply rely on the facts alleged in the complaint but must instead produce affirmative evidence.  Anderson, 477 U.S. at 257.  Indeed, "[i]n a § 1983 case, the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and thus must come forward with sufficient evidence to create genuine issues of material fact to avoid summary judgment."  McAllister v. Price, 615 F.3d 877, 881 (7th Cir. 2010).

Importantly, at the summary judgment stage, the Court must consider the evidence "in the light most favorable to the non-moving party."  Ricci v. DeStefano, 557 U.S. 557 (2009).  Moreover, material factual disputes are resolved in Plaintiff's favor because "the [competent] evidence of [Plaintiff] is to be believed."  Anderson, 477 U.S. at 269.

## FACTS

Plaintiff Earl Sidney Davis is a 69-year-old civilly committed detainee.  Pl.'s Dep. at 4.  He has been adjudicated a sexually violent person pursuant to the

Illinois Sexually Violent Persons Act.  See Defs.' Mem. of Law in Supp. of Defs.
Lay and Wessel's Supplemental Mot. for Summ. J. at 2.  Currently, Plaintiff is in
the custody of the Illinois Department of Human Services ("DHS") and resides at
the Rushville Treatment and Detention Facility ("Rushville") in Rushville, Illinois.
Id. at 1.

      Plaintiff began this lawsuit on December 29, 2009 by filing a complaint
against Defendants that alleged due process claims of excessive force,
unconstitutional application of the "black box" restraint, unconstitutional
disciplinary hearing procedures, and wanton infliction of psychological (and
perhaps physical) pain.  See Op. at 1-2, 23.  On March 16, 2012, this Court granted
summary judgment to Defendants Groot and Simpson in full and to Defendants
Haage, Lay, Logan, Orrill, Phillips, Wessel, and Williams in part.  Id. at 25.
Surviving were the excessive force claims against Defendants Daniels, Logan, and
Orrill and the claim for wanton infliction of psychological, and possibly physical,
pain against Defendants Lay and Wessel.  Id.

      These Defendants were given an opportunity to file a Supplemental Motion
for Summary Judgment, which Defendants Lay and Wessel have done.  See Op. at
26; Defs.' Supplemental Mot. for Summ. J.  Defendants George Lay and Seth C.
Wessel were both DHS Security Therapy Aids at the time of the incident in

4

dispute.  Lay Aff. ¶¶ 1–2.  Specifically, Plaintiff alleges that Defendants Lay and
Wessel violated his constitutional rights on May 22, 2008 when Defendants
accompanied Plaintiff on a court writ to the Madison County Courthouse.  Pl.'s
Dep. 71.  In the course of attending this writ, Plaintiff was restrained by use of the
"black box" handcuff system.[1]  Plaintiff claims that during his hearing, he asked
the judge if his restraints could be removed so that he could use the bathroom.  Id.
According to Plaintiff, Defendants assured the judge they would remove the
constraints.  Id. at 72.  Yet, when the hearing ended and Defendants escorted
Plaintiff to the restroom, Defendants declined to remove the "black box" restraints
as promised.[2]  Id.  Plaintiff states he addressed Defendants, saying, "[A]re you
going to take these [restraints] off? . . . you just told the judge you would."  Id.
Defendants still refused.  Id.  Plaintiff claims he then advised Defendants that he
also had a written court order from Judge James Hackett, stating "shackles shall be
removed at courthouse in order to allow [Earl Sidney Davis] to utilize restroom
(handcuffs, too)."  Id.; see also Pl.'s Resp. to Defs.' Supplemental Mot. for Summ.
J. Ex. C; Pl.'s Mot. to Supplement the Record with a Clear Certified Copy of Ex.

---

[1] "The black box is a rectangular device measuring approximately four inches by three inches.
When placed over the chain of a pair of handcuffs, it both limits a prisoner's ability to move his
hands, and prevents access to the handcuffs' keyholes."  Davis v. Peters, 566 F. Supp. 2d 790,
798 (N.D. Ill. 2008) (internal citations omitted).

[2] Neither party disputes that Defendants refused to remove the "black box" restraints from
Plaintiff's wrists while Plaintiff used the courthouse restroom.

(S), The Madison County Ct. Order issued Feb. 13, 2001 Ex. S. Defendants

purportedly retorted, "A court order is not worth the paper it's written on."  Pl.'s

Dep. 72.  Defendants deny making this statement and deny any awareness that a

court order to remove Plaintiff's restraints was in place.  Lay Aff. ¶ 5.  An actual

court order had in fact been issued by Judge Hackett on February 13, 2001.  See

Pl.'s Mot. to Supplement the Record with a Clear Certified Copy of Ex. (S), The

Madison County Ct. Order issued Feb. 13, 2001 Ex. S.  Nevertheless, no evidence

indicates that Defendants were actually aware of this 2001 order prior to the May

22, 2008 bathroom incident.

Specifically, Plaintiff complains that wearing the "black box" restraints

caused "excruciating pain" and hindered his ability to wipe and zip and pull his

pants up and down.  See Pl.'s Resp. to Defs.' Supplemental Mot. for Summ. J. at

18; see also Pl.'s Dep. 72.  According to Plaintiff's testimony, the courthouse

bathroom is located in a hallway used by female deputy sheriffs.  Id.  The

bathroom itself is a small, windowless room with concrete walls and only a toilet

and sink inside.  Id.  Plaintiff contends that Defendants forced Plaintiff to urinate

with the "black box" handcuffs still attached to his wrists.  Pl.'s Dep. 73.

Defendants allegedly held open the bathroom door and watched, laughing, as

Plaintiff attempted to unzip his pants and urinate.  Id. at 72–73.  Plaintiff claims

6

that in attempting to zip and unzip his pants, the cuffs scraped his arms and caused bleeding.  Id. at 72.

Plaintiff alleges Defendants' actions were a physical and psychological attack on him.  See Decl. of Earl Sidney Davis Attached to Pl.'s Resp. to Defs.' Supplemental Mot. for Summ. J. at 3.  However, Defendants deny that they ever laughed at Plaintiff while he used the restroom.  Lay Aff. ¶ 7.  Instead, Defendants contend that their refusal to remove Plaintiff's restraints was within their professional discretion and consistent with standard DHS security procedures.  See Defs.' Mem. of Law in Supp. of Defs. Lay and Wessel's Supplemental Mot. for Summ. J. at 4.  Defendants assert that the policy of the Rushville administration requires "all residents taken outside of the facility [to] wear restraints," not as an intention to humiliate the residents, but instead as a method to "protect members of the public who may come into contact with the resident[s]."  Id.  Defendants further state that restraints are not to be removed at the "unsecured location," unless the removal is pursuant to a court order and only done after receiving authorization from Defendants' superiors at Rushville.  Id. at 3.

Plaintiff, however, says there have been many occasions where he has not worn restraints on court writs and when his escort team has removed his handcuffs pursuant to a judge's order without first obtaining permission from supervisors at

Rushville.  See Pl.'s Resp. to Defs.' Supplemental Mot. for Summ. J. at 16–18; see

also id. at 19–22.  Furthermore, although Defendants assert "it is possible to use

the restroom while wearing constraints," Lay Aff. ¶ 4, Plaintiff disagrees.  See Pl.'s

Resp. to Defs.' Supplemental Mot. for Summ. J. at 17–18.  Particularly, Plaintiff

notes that wearing the "black box" restraints restricts his ability to wipe and pull

his pants up and down.  See id. at 18.  In further support, Plaintiff has presented a

copy of a 2001 court order from Judge James Hackett of the Third Judicial Circuit

Court of Madison County saying "shackles shall be removed at courthouse in order

to allow [Earl Sidney Davis] to utilize restroom (handcuffs, too)."  See Pl.'s Mot.

to Supplement the Record with a Clear Certified Copy of Ex. (S), The Madison

County Ct. Order issued Feb. 13, 2001 Ex. S.  Plaintiff has also submitted the

testimony of former DHS Facility Director Timothy Budz taken on direct

examination during a 2007 court proceeding in Davis v. Peters, in which Budz

states that DHS officers generally defer to the judge's preference on removing a

resident's shackles during court writs.  See Pl.'s Resp. to Defs.' Supplemental Mot.

for Summ. J. Ex. A4–A6.

Defendants Lay and Wessel have asserted qualified immunity and reiterate

that their refusal to remove Plaintiff's handcuffs was a reasonable, and standard,

security measure.  See Defs.' Mem. of Law in Supp. of Defs. Lay and Wessel's

8

Supplemental Mot. for Summ. J. at 5–6.  Defendants now move for summary

judgment, further arguing that any dispute about whether the judge ordered

Defendants to unshackle Plaintiff is not relevant for purposes of granting summary

judgment.  Id. at 4.

## ANALYSIS

### I. Substantive Law

Federal law allows plaintiffs to recover from government officials who have

deprived them of their constitutional rights:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State . . . subjects, or causes to be subjected,
> any citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party
> injured.

42 U.S.C. § 1983 (2006).  Simply because a person is committed or incarcerated

does not mean they have been stripped of all of their constitutional rights.  See

Youngberg v. Romeo, 457 U.S. 307, 315 (1982) ("The mere fact that [the plaintiff]

has been committed under proper procedures does not deprive him of all

substantive liberty interests under the Fourteenth Amendment.").  Moreover,

"persons who have been involuntarily committed are entitled to more considerate

treatment and conditions of confinement than criminals whose conditions of

confinement are designed to punish."  Id., 457 U.S. at 321-22. Therefore, both

prisoners and civil detainees like Plaintiff have a right pursuant to § 1983 to

challenge the constitutionality of their conditions of confinement and may do so by

filing suit against officers who have violated their constitutional rights while acting

under color of State law.  Bridges v. Gilbert, 557 F.3d 541, 553 (citing Lewis v.

Casey, 518 U.S. 343, 355 (1996)).

However, courts must afford substantial deference to the judgment of state

officials:

> The difficulties of operating a detention center must not be
> underestimated by the courts . . . Maintaining safety and order at these
> institutions requires the expertise of correctional officials, who must
> have substantial discretion to devise reasonable solutions to the
> problems they face. The Court has confirmed the importance of
> deference to correctional officials and explained that a regulation
> impinging on an inmate's constitutional rights must be upheld if it is
> reasonably related to legitimate penological interests.

Florence v. Bd. of Chosen Freeholders of County of Burlington, 132 S. Ct. 1510,

1515 (2012) (internal citations and quotations omitted).  Certainly, important

objectives like public security and preserving institutional order may occasionally

necessitate that retained constitutional rights be limited or retracted.  Pippins v.

Adams County Jail, 851 F. Supp. 1228, 1233-34 (C.D. Ill. 1994) (citing Bell v.

Wolfish, 441 U.S. 520, 547 (1978)).  Indeed, civil detainees may have certain

rights limited and may be subjected to particular conditions that advance critical

societal goals such as preventing escape of dangerous individuals and ensuring the

safety of others.  Allison v. Snyder, 332 F.3d 1076, 1079 (7th Cir. 2003) (citing

Allen v. Illinois, 478 U.S. 364, 373-74 (1986)).

To evaluate whether a civil detainee's constitutional rights have been

violated or whether those rights were appropriately limited for the sake of

advancing societal goals and public safety, courts must decide whether state

officials exercised professional judgment in their decisions.  Youngberg, 457 U.S.

at 321.  In fact, the Seventh Circuit specifically notes that state officials have a

duty to use professional judgment in dealing with detainees and determining the

needs of residents and the public.  West v. Schwebke, 333 F.3d 745, 748 (7th Cir.

2003) (internal quotations omitted).  Liability is therefore imposed on a

professional official "only when [his or her decision] . . . is such a substantial

departure from accepted professional judgment, practice, or standards as to

demonstrate that the person responsible actually did not base the decision on such a

judgment."  Id. at 323.  Otherwise, a decision made by a professional[3] is

"presumptively valid."  Id.  As a result, the Constitution permits the use of

restraints and other devices that professional judgment deems necessary for

maintaining the wellbeing of both detainees and the public.  Schwebke, 333 F.3d at

748.

---

[3] A "professional" describes an individual deemed competent to make decisions
because of his or her educational background, training, and experience.
Youngberg, 457 U.S. at 323 n.30.

11

However, the necessity for restraints must be genuine, not a pretext.  The Eighth Amendment forbids the unnecessary cruelty and intentional infliction of suffering that is completely without penological justification.  See Calhoun v. DeTella, 319 F.3d 936, 939 (7th Cir. 2003).  Although Plaintiff's claims technically fall under the Due Process Clause of the Fourteenth Amendment because he is a civil detainee, the Eight Amendment standard is apt and therefore prohibits unjustified punishment to Plaintiff.  Notably, a prisoner's cause of action stating wanton infliction of pain can be valid even without evidence of physical injury.  Id.  Furthermore, the Seventh Circuit specifically discussed the unlawful use of restraints in May v. Sheahan.  May v. Sheahan, 226 F.3d 876, 884 (7th Cir. 2000).  In that case, a pre-trial detainee challenged a policy of the Cook County Sheriff's Department which required hospital detainees to be shackled 24 hours a day to their beds, by both hands and feet, despite the constant presence of an armed security guard.  As the Seventh Circuit acknowledged, the Due Process Clause prohibits the use of bodily restraints when it "is not rationally related to a legitimate non-punitive government purpose" or when the restraints "appear excessive in relation to the purpose they allegedly serve.  Id.

Yet, even if a plaintiff proves the existence of a constitutional violation, State officials may eschew liability because of qualified immunity. Officials are

12

entitled to qualified immunity if "'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Purvis v. Oest, 614 F.3d 713, 720 (7th Cir. 2010), cert. denied (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Once a defense of qualified immunity is raised, the burden shifts to the plaintiff to prove that the defense does not apply to the particular circumstances of his or her lawsuit.  Id. (citing Mannoia v. Farrow, 476 F.3d 453, 457 (7th Cir. 2007)).  The Supreme Court utilizes a two-part test for determining if a defendant is entitled to qualified immunity: "(1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendant violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation."  Wheeler v. Lawson, 539 F.3d 629, 639 (7th Cir. 2008) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).  For the right to be "clearly established," a reasonable officer in the defendant's position must have known his actions were unlawful in the specific circumstances he encountered.  Id. at 640.

## II. Application of Law to Facts

### 1. Drawing reasonable inferences in Plaintiff's favor, a rational jury could find that Defendants violated Plaintiff's constitutional rights.

Material factual disputes remain to be resolved that only a jury can appropriately determine.  Plaintiff's evidence raises a plausible inference that

13

Defendants' refusal to remove the restraints was not motivated by legitimate security interests but instead by an intent to humiliate Plaintiff and cause him psychological, if not also physical, pain.  Watching and laughing while forcing a detainee to try to urinate wearing the "black box" restraints, possibly injuring and publicly exposing himself in the process, are actions questionably consistent with professional judgment when evaluated by standards from prior case law.

Moreover, whether Plaintiff actually needed to be restrained while using the bathroom is also questionable.  First, the former director's testimony and the judge's order plausibly establish that residents do not always remain in restraints during court writs.  See Pl.'s Resp. to Defs.' Supplemental Mot. for Summ. J. Ex. A5.  In a 2007 court transcript taken from Davis v. Peters, former DHS facility director Timothy Budz testified during direct examination that DHS staff complies with court orders to remove a resident's shackles, and that "generally, [removing restraints] did not even necessitate a court order":

> When the resident arrived at the courthouse, it was up to the local courthouse and the sheriff's office there or the judge in the courtroom as to whether or not the individual would be left in restraints or whether they would be removed from restraints, and we would follow the direction of the local sheriff or the judge in that situation. . . .  We would definitely comply with a court order . . . .  It would be the judge to bring the person in without the use of restraints.  If [the judge] were comfortable with that, we would follow [his or her] direction.  Some judges prefer that the person remain shackled during the hearing, and others would prefer that they would be removed from the shackles during the hearing, so *we would defer to the judges* . . . during the

14

> time the person was in that particular courthouse.  It would not require
> a court order for that to occur.

Id. at Ex. A4–A6 (emphasis added).  This testimony by Budz directly conflicts

with the assertion of Defendants Lay and Wessel that they may only remove a

resident's restraints after first receiving approval from a DHS supervisor.  Whether

standard DHS policy is to only remove a resident's restraints with a supervisor's

permission, or whether the standard policy is to defer and comply with a judge's

preference, is crucial to this claim because it indicates whether Defendants were

exercising judgment consistent with the professional policies of their employer.

To demonstrate whether Defendants exercised professional judgment,

Plaintiff states that the judge presiding over Plaintiff's May 22, 2008 court hearing

specifically asked Defendants whether they had any objections to removing

Plaintiff's restraints to enable him to use the restroom.  According to Plaintiff,

Defendants assured the judge they would remove the restraints without expressing

any concerns, and without first contacting any DHS supervisors.  If Plaintiff's

factual account is true, it contradicts Defendants' contention that they only refused

to remove the restraints because of standard security reasons and because they did

not have their supervisors' authority to unshackle Plaintiff.  Simply because

security measures could be a justification for an officer's decision to keep a

resident restrained does not mean security measures actually played a role.  Stated

differently, "It is not enough that some hypothetical professional judgment could support a given decision in the civil commitment context; rather, it must also be shown that professional judgment was actually exercised." Davis v. Peters, 566 F. Supp. 2d 790, 818 (N.D. Ill. 2008).

Ordinarily, the Court gives great deference to security officials and the decisions they make within the scope of their employment. See Florence, 132 S. Ct. at 1513-14 ("[C]ourts must defer to the judgment of correctional officials unless the record contains substantial evidence showing their policies are an unnecessary or unjustified response to problems of jail security."). However, the facts in the instant claim create a plausible inference that Defendants' alleged conduct was not motivated by safety concerns. Indeed, a favorable view of Plaintiff's acts could indicate that Defendants exercised no discretion in determining the level of security precaution needed while Plaintiff used the restroom.

First, the record indicates Plaintiff only requested his restraints be removed for the few minutes he would be using the restroom. Second, because Plaintiff describes the bathroom as a small, windowless, and single-stalled room with concrete walls, nothing in the record indicates that Plaintiff likely could have endangered another person while urinating alone inside of it, nor escaped from the

16

restroom by any entrance other than the door Defendants were guarding.  This view of the facts makes doubtful the need for Plaintiff to remain in restraints.  In the absence of a legitimate, expressed need, Defendants' purported acts against Plaintiff could be viewed as mocking and degrading.  See May v. Trancoso, 412 F. App'x 899, 903 (7th Cir. 2011) ("A factfinder can reasonably infer an intent to harass when prison officials give no valid reason for a group strip search and guards demean prisoners during the search.") (not published in Federal Reporter)[4].

This inference that Defendants' behavior was not intended to protect the public, but instead to harass Plaintiff, is especially plausible if Defendants actually had knowledge of a court order to remove the restraints, as Plaintiff alleges they did.  Such an order would indicate even the judge did not feel that unshackling Plaintiff for a few minutes to use the bathroom would pose a threat to the people in the courthouse.  As the Seventh Circuit recognizes, officials cannot use security procedures as a disguise for intentional humiliation and harassment. See Calhoun, 319 F.3d at 939 (the court held that the plaintiff stated a claim when he alleged that the officials conducted a strip search in a harassing manner and in front of female officers solely to humiliate and inflict psychological pain upon him).

Plaintiff also alleges facts that indicate Defendants' purported conduct may

---

[4] Although May v. Trancoso is not precedential, see 7th Cir. App. R. 32.1, its reasoning is persuasive.

have caused Plaintiff to expose himself indecently to members of the public.
Plaintiff alleges the bathroom was located in a hallway used by female deputies
and that the Defendants nevertheless kept the door open while Plaintiff urinated.
Defendants do not respond to this assertion nor do they explain how holding the
bathroom door open and possibly exposing Plaintiff to spectators while he urinated
would fall under the umbrella of exercising professional judgment.

The Seventh Circuit has acknowledged that "[b]oth the presence of civilian
spectators and jeering by observers are evidence of an intent to humiliate." May,
412 F. App'x at 903 (citations omitted). Based on the present record as relates to
the possibility of female spectators, see Pl.'s Dep. at 72, as well as the need to
weigh facts in the light most favorable to Plaintiff, the Court cannot grant summary
judgment in favor of Defendants. In denying summary judgment at this time, the
Court is not attempting to denounce the justified use of restraints by security
professionals as unlawful. See Defs.' Mem. of Law in Supp. of Defs. Lay and
Wessel's Supplemental Mot. for Summ. J. at 6. Instead, this Court is following the
Seventh Circuit's position that security procedures should not be conducted to
humiliate or inflict psychological pain.

**2. *Defendants are not entitled to qualified immunity because a reasonable
official would have known that security procedures implemented for purposes
of humiliation or harassment are unlawful.***

18

Defendants argue they are entitled to qualified immunity and that the law "allows for the use of restraints when security professional determine it appropriate for the safety of the public." See Defs.' Mem. of Law in Supp. of Defs. Lay and Wessel's Supplemental Mot. for Summ. J. at 6. As previously stated, courts apply a two-part test for determining if a defendant is entitled to qualified immunity: "(1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendant violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation." Wheeler v. Lawson, 539 F.3d 629, 639 (7th Cir. 2008) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). Again, a right is "clearly established" when a reasonable officer in the defendant's position would know his actions were unlawful in the situation he encountered. Id. at 640.

As a result of this two-part test, the Court must view facts at the summary judgment stage most favorably to the non-movant, or in this case, Plaintiff. Assuming Plaintiff's allegations are true, then, it appears Defendants' refusal to remove the "black box" handcuffs while Plaintiff urinated may have been an attempt to humiliate and demean Plaintiff. Defendants have not yet proved the existence of a genuine security need for the restraints or a professional reason for laughing at Plaintiff and holding the bathroom door wide open while Plaintiff

urinated.  Based on the Seventh Circuit's view that security procedures cannot be

used for harassment purposes, a jury could find Defendants violated Plaintiff's

constitutional right to be free from the wanton infliction of emotional and physical

pain.  Further, this right was "clearly established" at the time the bathroom incident

occurred.  See Calhoun, 319 F.3d at 939 (noting that the plaintiff could state an

Eight Amendment claim by showing that his strip search was not "merely a

legitimate search conducted in the presence of female correctional officers, but

instead a search conducted in a harassing manner intended to humiliate and inflict

psychological pain").  Furthermore, in Whitman v. Nesic, the Seventh Circuit has

indicated its intention to outlaw harassment that is disguised as a standard security

measure.  Whitman v. Nesic, 368 F.3d 931, 934–35 (7th Cir. 2004) (noting that

although a prisoner's privacy may be limited to maintain institutional security and

internal order, a strip search conducted with malicious motivation and without

penological justification is unconstitutional).

As the Seventh Circuit has recognized, a plaintiff need not allege an

identical factual scenario to a precedential case in order to show he has a "clearly

established right."  See Sheahan, 226 F.3d at 884 (noting that the plaintiff did not

need to allege identical facts to prior case law for the court to find a "clearly

established right" and to hold that the defendant was not entitled to qualified

immunity when the plaintiff alleged he was being shackled for reasons unrelated to penological reasons).  In fact, it suffices that precedent establishes that security procedures may not be used for means of harassment and, specifically, that restraints may not be used without penological justification.  See id. ("[Particularity is not required . . . It is enough that precedent establishes that pretrial detainees may not be shackled without a good penological or medical reason.")

Therefore, based on the established case law at the time of Plaintiff's bathroom incident, a reasonable official in Defendants' position would likely be aware that using restraints without legitimate justification can amount to taunting behavior that is not only offensive and unprofessional, but also a violation of another's clearly established constitutional right.  Stated differently, because a rational juror could find that Defendants' conduct was not motivated by security reasons but instead by a desire to harass and humiliate, Defendants consequently are not entitled to qualified immunity at this time.

## CONCLUSION

For the foregoing reasons, the Court concludes that Defendants are not entitled to summary judgment.  Accordingly, Defendants' supplemental motion for summary judgment is DENIED as to Defendants Lay and Wessel.

21

IT IS THEREFORE ORDERED:

1)  The Supplemental Motion for Summary Judgment by Defendants Lay and Wessel is denied (d/e 77).  At this time, Plaintiff's cause of action against Defendants Lay and Wessel shall proceed.

2)  The final pretrial conference is rescheduled for October 9, 2012 at 1:30 p.m.. Defense counsel shall appear in person, while Plaintiff shall appear by video conference.  The parties shall agree upon and submit a proposed, final pretrial order at least fourteen days before the final pretrial conference.  Defendants bear the responsibility of preparing the proposed final pretrial order and mailing a copy to Plaintiff to allow Plaintiff sufficient time to review the order before the final pretrial conference.  See CD-IL Local Rule 16.3.[5]

3)  The clerk is directed to issue a writ to secure Plaintiff's appearance via video at the final pretrial conference.

4)  The proposed final pretrial order must include the names of all witnesses to be called during trial. Additionally, the proposed order must indicate whether each witness will appear in person or by video conference. Nonparty witnesses detained at the Rushville Treatment and Detention Facility shall testify via video conference.

---

[5] The Local Rules are available on the District Court's website at http://www.ilcdluscourts.gov. Attached to the Rules is a sample pretrial order.

5)  The proposed pretrial order must also contain the name and address of any witness for whom a party seeks a trial subpoena.  The parties shall bear the responsibility for timely obtaining and serving any necessary subpoenas, as well as providing the necessary witness and mileage fees.  Fed. R. Civ. P. 45.

6)  A jury trial for Tuesday, November 6, 2012, at 9:00 a.m. remains scheduled on the Court's trailing trial calendar.  The final date for jury selection and trial shall be decided during the final pretrial conference.  The parties must appear for trial by personal appearance before this Court in Springfield, Illinois.

7)  Upon entry of the final pretrial order, the Clerk is directed to issue the appropriate processes to secure the personal appearance of Plaintiff at the trial as well as the video appearances of the video witnesses at trial.

ENTERED: September 4, 2012

FOR THE COURT:

**s/Sue E. Myerscough**
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE