UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

EARL SIDNEY DAVIS                )
                                 )
    Plaintiff,                   )
                                 )
    v.                           )       09-CV-3336
                                 )
SHON ORILL,                      )
RICHARD LOGAN,                   )
SETH WESSEL,                     )
GEORGE LAY, and                  )
DONALD DANIELS,                  )
                                 )
    Defendants.                  )

<u>OPINION</u>

SUE E. MYERSCOUGH, U.S. District Judge:

Plaintiff filed this case pro se from his detention in the Rushville Treatment and Detention Center.   On October 16, 2012, the Court appointed two senior law students from the University of Illinois College of Law Federal Civil Rights Clinic to represent Plaintiff, after Plaintiff's claims had survived summary judgment.   A three-day jury trial was held on Plaintiff's three claims:   1) an excessive force claim against Defendant Orill; 2) a separate claim for excessive force against Defendants Daniels and Logan; and, 3) a separate claim for

unconstitutional use of restraints against Defendants Lay and Wessel.   The jury returned a verdict for Defendants on the first two claims.   On the third claim—unconstitutional use of restraints by Defendants Lay and Wessel—the jury found for Plaintiff, awarding Plaintiff $1,000 in compensatory damages and zero in punitive damages.

The case is before the Court on Defendants' motion for judgment as a matter of law or for a new trial and Plaintiff's motions for fees and costs.   For the reasons below, Defendants' motion for judgment as a matter of law or for a new trial is denied.   The Court awards $4,920.00 as a reasonable attorney's fee and $16.45 in costs.

## Evidence Supporting the Verdict

Plaintiff prevailed on his claim that Defendants Lay and Wessel used unconstitutional restraints.   In particular, the evidence showed that on May 22, 2008, Plaintiff was transported from the Rushville Treatment and Detention Center to the Madison County Courthouse for a hearing.   During the transport Plaintiff was restrained in leg chains, handcuffs attached to a waist chain, and a black box secured over the handcuffs.

Plaintiff claimed that Defendants Wessel and Lay refused to temporarily remove Plaintiff's hand restraints (the handcuffs and black box) so that Plaintiff could use the courthouse bathroom after the hearing, before the ride back to the detention center.   Plaintiff testified that Lay and Wessel had orally assured the Madison County judge at the hearing that Plaintiff's hand restraints would be removed so that Plaintiff could use the restroom.   However, Lay and Wessel refused to do so.   Plaintiff was forced to try to urinate with the hand restraints on and with the bathroom door open to a hallway where others might walk by and Lay and Wessel watching.   Plaintiff testified that trying to urinate with the restraints on caused him physical pain and that he got urine on his hands and pants while Defendants Wessel and Lay laughed at Plaintiff.   Plaintiff also testified that he was not allowed to wash his hands and had to sit in his soiled pants on the ride back to the detention facility.

Pictures of the courthouse restroom showed that the bathroom was a small, windowless room, containing a sink, toilet, and only one door.   Plaintiff also presented evidence of a prior court order from the state court judge directing that Plaintiff's restraints be removed

when Plaintiff used the restroom at the Madison County Courthouse. Defendants denied knowing about that order, but Plaintiff testified that he had told Defendants about the order.   The evidence also showed that Law and Wessel could have contacted their superiors to obtain authorization to remove the hand restraints so Plaintiff could use the bathroom.   At the time of the trial, Plaintiff was 65 years old, of slight stature, and moved slowly due to back problems.

## New Trial

Defendants take issue with several jury instructions.   First, they argue that the Eighth Amendment "malicious and sadistic" standard should have been used and that the jury should have been instructed that Lay and Wessel must have intended to cause Plaintiff suffering.

The Court instructed the jury:

> Plaintiff has a right to due process under the Fourteenth Amendment to the Constitution.   In the context of this case, that means that Plaintiff has a right to be free from excessive force and a right to be free from bodily restraints which are not rationally related to legitimate security purposes or are excessive in relation to those purposes. Actions taken for the purpose of humiliating and inflicting psychological pain on Plaintiff for no legitimate reason violate Plaintiff's rights under the due process clause.

(d/e 151, p. 18.)

The Court further instructed:

To succeed on his due process claims against Defendants
Lay or Wessel, Plaintiff has the burden of proving that the
Defendant under consideration subjected Plaintiff to
bodily restraint which was not rationally related to
legitimate security purposes, or was excessive in relation
to those purposes, or was done in a manner which
amounted to harassment for the purpose of humiliating
and inflicting psychological pain on Plaintiff for no
legitimate reason.

(d/e 151, p. 21).

Defendants' proposed instructions required the jury to find that

Lay and Wessel acted maliciously and sadistically and that

Defendants intended to cause Plaintiff physical or mental pain and

suffering.   (Defs.' proposed instructions 6, 9. d/e 152, pp. 72, 75).

Defendants argue that the Eighth Amendment standard applied to

the unconstitutional restraints claim: "[a]lthough Plaintiff is not an

inmate, Plaintiff is not entitled to any greater protection than the

Eighth Amendment's ban on cruel and unusual punishment."

(Defs.' Mot., d/e 158, p. 3).

However, this argument runs directly counter to the Seventh

Circuit precedent discussed in the Court's 11/20/12 order (d/e 132, ¶ 5), which the Court adopts for purposes of this order.   As stated in that order, the Rice case does not help Defendants because the plaintiff in Rice did not object to the application of an Eighth Amendment standard.   Most of the other cases cited by Defendants do not involve the excessive use of restraints against a pretrial detainee.   *See* County of Sacramento v. Lewis, 523 U.S. 833 (1998)(high-speed chase by police); Richman v. Sheahan, 512 F.3d 876, 881 (7th Cir. 2008)(discussing 8th Amendment excessive force standard for person found in contempt of court).

The Hart case cited by Defendants, Hart v. Sheahan, 396 F.3d 887 (7th Cir. 2005), does deal with excessive restraints used on a pretrial detainee.   Hart actually supports the Court's jury instructions:

> As we said in May v. Sheahan, *supra*, 226 F.3d at 884, another case about the conditions in which inmates are held in the Cook County Jail, "the use of bodily restraints constitutes punishment in the constitutional sense if their use is not rationally related to a legitimate non-punitive government purpose or they appear excessive in relation to the purpose they allegedly serve." . . .

The Court's jury instructions tracked the language in May v.

<u>Sheahan</u>, 226 F.3d 876 (7th Cir. 2000), a case challenging the use of

restraints on a hospitalized detainee:

> The Due Process Clause of the Fourteenth Amendment
> prohibits the use of bodily restraints in a manner that
> serves to punish a pre-trial detainee. <u>Youngberg v. Romeo</u>,
> 457 U.S. 307, 316, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982);
> <u>Bell v. Wolfish</u>, 441 U.S. 520, 535-37, 99 S.Ct. 1861, 60
> L.Ed.2d 447 (1979); <u>Murphy v. Walker</u>, 51 F.3d 714,
> 717-18 (7th Cir.1995). The use of bodily restraints
> constitutes punishment in the constitutional sense if their
> use is not rationally related to a legitimate non-punitive
> government purpose or they appear excessive in relation to
> the purpose they allegedly serve. <u>Wolfish</u>, 441 U.S. at 561,
> 99 S.Ct. 1861.

226 F.3d at 884.   Nothing in this standard requires an intent to

cause suffering or a malicious and sadistic motive.

Defendants' arguments are essentially an argument for a

change in the law, an argument which can be entertained only

by the Seventh Circuit.   In any event, looking at the evidence in

the light most favorable to Plaintiff supports a jury verdict for

Plaintiff even under the Eighth Amendment standard pressed

by Defendants.

Defendants next challenge the Court's refusal to give their

proposed instruction 16.   (Defs. Proposed 16, d/e 152, p. 4).

This instruction essentially told the jury that Defendants'
violation of a court order regarding Plaintiff's restraints could be
considered as evidence, but that "the issue is whether the
defendants used excessive force against the plaintiff, not
whether the court order might have been violated."
Defendants' use of the term "excessive force" in their proposed
instruction 16 was confusing in the context of the excessive
restraint claim against Lay and Wessel.   Additionally, the
proposed instruction was unnecessary.   The Court's
instructions already set forth the applicable legal standard.
Admission of the court order was relevant to whether the
security reasons given by Defendants for not removing the
restraints were legitimate or pretextual.   The jury was not
confused that the court order automatically meant that the
restraints were excessive.

Defendants next argue that Plaintiff is not entitled to
recover emotional damages.   But the case cited by Defendants,
Denius v. Dunlap, 330 F.3d 919 (7th Cir. 2003), actually
supports the award of compensatory damages to Plaintiff:

> [B]are allegations by a plaintiff that the defendant's conduct
> made him "depressed," "humiliated," or the like are not
> sufficient to establish injury unless the facts underlying the
> case are so inherently degrading that it would be
> reasonable to infer that a person would suffer emotional
> distress from the defendant's action.

330 F.3d at 930.   What happened to Plaintiff (accepting Plaintiff's testimony as true) was "inherently degrading":   being forced to urinate on oneself for no legitimate reason while others watch and laugh is "so inherently degrading" that the emotional distress Plaintiff experienced at that moment supports the compensatory damage award, even if he had no lasting emotional damage.   In contrast, Denius involved the plaintiff being politely escorted out of the building after he was fired, certainly embarrassing, but far from degrading.

## Judgment as a Matter of Law

Judgment as a matter of law, which overturns a jury verdict, is warranted only if the evidence at trial, viewed in the prevailing party's favor, is insufficient to support the verdict.   The Court must find that "no rational jury could have found for the prevailing party."

EEOC v. Auto Zone, Inc., 707 F.3d 824, 835 (7th Cir. 2013).

Defendants argue that no evidence supported a finding that keeping the restraints on Plaintiff as he attempted to urinate "was an exaggerated response to legitimate security concerns."   (Defs.' Mot., d/e 158, p. 15).   Defendants point to evidence that, even with the restraints on, Plaintiff could have managed to urinate without hurting or wetting himself.   This ignores Plaintiff's testimony that trying to urinate with all the restraints on was very difficult for Plaintiff, caused him pain, and caused him to urinate on himself. Defendants also argue that the legitimate security concerns for keeping the restraints on were obvious from Plaintiff's legal status as a sexually violent person.   Defendants contend that Plaintiff must have been a serious security risk because otherwise Plaintiff would not have been wearing a black box.   These arguments ignore Plaintiff's evidence that removing Plaintiff's hand restraints while Plaintiff urinated presented no security risk.   Plaintiff was feeble, already wearing leg shackles, and could not have escaped from the courthouse bathroom without first fighting his way past two security guards and running away in leg shackles.   In short, Plaintiff's

evidence allowed a reasonable inference that no legitimate security risk was presented by allowing Plaintiff to use the restroom without his hand restraints.

Defendants also assert that qualified immunity shields them from the jury's damage award.   Qualified immunity shields government officials from liability under § 1983 "for actions taken while performing discretionary functions, unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." Brokaw v. Mercer County, 235 F.3d 1000, 1022 (7th Cir.2000).

Defendants argue that they have "been unable to locate any authority in this Circuit that hold that using the restroom while restrained is unconstitutional."  (Defs.' Mot. d/e 158, p. 17.)   But a case directly on point is not required to defeat a defense of qualified immunity.   "[J]ust as defining a right too broadly may defeat the purpose of qualified immunity, defining a right too narrowly may defeat the purpose of § 1983."   Abbott v. Sangamon County, 705 F.3d 706, 732 (7th Cir. 2013).   Qualified immunity does not require "characterizing the relevant constitutional right in a way that

essentially demands precedent involving an almost identical factual
scenario. . . . It is enough that precedent establishes that pretrial
detainees may not be shackled without a good penological or medical
reason." May v. Sheahan, 226 F.3d 876, 884 (7th Cir. 2000)(denying
qualified immunity on excessive bodily restraint claim by pretrial
detainee for shackling hospital detainees to their beds, despite the
detainee's "weakened state and despite being watched by armed
guards.")

Looking at the evidence in the light most favorable to Plaintiff,
the jury could have concluded that Defendants Wessel and Lay 1)
ignored a judge's orders to remove the restraints; 2) knew that
Plaintiff could not effectively use the toilet without his hand
restraints removed, 3) intentionally refused to remove Plaintiff's hand
restraints even though doing so presented no security risk, 4)
intentionally refused to call their superior to ask about removal of
Plaintiff's hand restraints, 5) falsely assured the judge that the
restraints would be removed, and 6) laughed at Plaintiff's attempts to
urinate while they watched Plaintiff urinate on himself.   This
evidence allows an inference that Plaintiff's restraints were obviously

excessive in relation to security needs, in violation of Plaintiff's clearly established Fourteenth Amendment rights.   *See* <u>May v. Sheahan</u>, 226 F.3d 876, 884 (7th Cir. 2000).   This evidence also allows an inference that Defendants' actions were motivated by a desire to humiliate and degrade Plaintiff, another clearly established constitutional violation.   *See* <u>Calhoun v. DeTella</u>, 319 F.3d 936, 939 (7th Cir. 2003)(strip search conducted in harassing manner intended to humiliate and inflict psychological pain states Eighth Amendment claim).   Defendants are not protected by the defense of qualified immunity.

## § 1988 Attorney's Fee Award

Two senior law students from the University of Illinois College of Law Federal Civil Rights Clinic represented Plaintiff in this case. The students were provisionally admitted to practice under Local Rule 83.5(A) and supervised by Attorney Andrew Bequette, who is a member of the bar of this Court in good standing and is also a teacher and supervisor of the Clinic.   42 U.S.C. § 1988(b) allows the Court "in its discretion" to allow "the prevailing party, . . . a reasonable attorney's fee as part of the costs . . . ." in certain actions, including

actions under 42 U.S.C. § 1983 like this one.   Limitations on the award set by the Prison Litigation Reform Act do not apply because Plaintiff is not a "prisoner confined to any jail, prison, or other correctional facility."   42 U.S.C. § 1997e(d).

Defendants argue that fees cannot be awarded for the work done by the law students because the law students were not licensed attorneys.   However, the law students were provisionally admitted to practice *as attorneys* for purposes of this case.   CDIL-LR 83.5(A).   This is not a case where a pro se litigant seeks an attorney's fee, like the cases cited by Defendants.

Further, even if Plaintiff's counsel do not meet the definition of an "attorney" under § 1988, their work is still compensable as part of a reasonable attorney's fee under § 1988.   Defendants cite Missouri v. Jenkins by Agyei, 491 U.S. 274, 284-85 (1989), but that case actually supports Plaintiff.   The Supreme Court in that case held that "a 'reasonable attorney's fee [under 42 U.S.C. § 1988] cannot have been meant to compensate only work performed personally by members of the bar."   491 U.S. at 285.   The Court held that market-rate fees of paralegals, law clerks, and recent law graduates

were recoverable under § 1988.

The Court concludes that work by law students provisionally appointed pursuant to Local Rule 83.5 is work compensable as part of the "reasonable attorney's fee" under § 1988.   Ustrak v. Fairman, 851 F.2d 983 (7th Cir. 1988)(allowing recovery of 108.2 hours of law student time, reduced to reflect partial win); *see also* Washington v. Seattle School Dist. No. 1, 458 U.S. 457 n. 31 (1982)("[T]he Courts of Appeals have held with substantial unanimity that publicly funded legal services organizations may be awarded fees."); Mary and Crystal v. Ramsden, 635 F.2d 590, 602 (7th Cir. 1980)(Youth Policy and Law Center., Inc., which was financed by government and private contributions, was entitled to reasonable attorney's fee for representing juveniles in prison).

Defendants next argue that fees should not be awarded because Plaintiff's victory was de minimis.   In Farrar v. Hobby, 506 U.S. 103 (1992), the Supreme Court recognized that a civil rights plaintiff who wins any amount of damages, even nominal damages of $1.00, is a prevailing party for purposes of 42 U.S.C. § 1988.   506 U.S. at 112. However, the Court explained further that the "'degree of success'"

achieved by the plaintiff factors largely into determining the amount of a reasonable attorney's fee is under § 1988.   Id. (quoted cite omitted).   The plaintiff in Farrar had sought nearly $17 million for an alleged conspiracy and malicious prosecution by government officials to close the plaintiff's private school and to incarcerate the plaintiff.   The jury concluded that one of the defendants had deprived the plaintiff of a civil right, but that the deprivation had not caused the plaintiff's injuries.   The plaintiff was ultimately awarded nominal damages of $1.00.

The Farrar court upheld the lower court's denial of an attorney's fee award, even though the plaintiff had prevailed on his claim against one defendant.   The Court remarked, "[i]n some circumstances, even a plaintiff who formally 'prevails' under § 1988 should receive no attorney's fees at all. A plaintiff who seeks compensatory damages but receives no more than nominal damages is often such a prevailing party."   506 U.S. at 115.

Similarly, in a recent Seventh Circuit case, Aponte v. City of Chicago, 2013 WL 4563935 (7th Cir. 2013), the Seventh Circuit upheld the denial of a fee award where the plaintiff had sought

$100,000 in damages for an alleged unreasonable and destructive search of his home by officers.   The jury awarded the plaintiff $100 in compensatory damages against one of the defendants.   In upholding the denial of attorney's fees, the Seventh Circuit applied the factors set forth in Justice O'Connor's concurrence in Farrar:

> Those three factors, articulated in Justice O'Connor's concurrence, are the difference between amounts sought and recovered, the significance of the legal issue on which the plaintiff prevailed compared to those litigated, and public goal achieved. *See* Farrar, 506 U.S. at 121–22; Simpson, 104 F.3d at 1001. Of these three factors, the sum-awarded-versus-requested (which is also part of the threshold inquiry into whether to apply Farrar ) is the most important.

Aponte, 2013 WL 4563935 * 6.

In this case, Plaintiff asked for $25,000 from each of Defendants Lay and Wessel on the excessive restraint claim, making the total amount requested $50,000.   Plaintiff received $1,000, or .02 % of what he asked for.   Plaintiff also lost on his other two claims against the other defendants.   These factors weigh in favor of denying an attorney's fee award under Farrar. Aponte, 123 F.3d at 584 (affirming denial of fees where the plaintiff recovered .08 % of what he sought ($100/$125,000)).

However, the use of the black box and restraints on residents at the Rushville Treatment and Detention Center is a recurrent issue in this District.   This Court has had several cases involving the use of the black box and other restraints on alleged ailing or infirm residents at the Center.   One case now pending before the Court involves the use of handcuffs on a resident who had just undergone carpal tunnel surgery and was being transported from the hospital back to the Center. Rainwater v. McCalla, et al., 10-cv-3252, *see* 11/13/12 order denying summary judgment; *see also* McGee v. Adams, 721 F.3d 474 (7th Cir. 2013)(Rushville resident who had undergone cancerous tumor removal from his thigh and biopsies on his lower legs was required to wear metal leg irons during transport)(affirming Judge Baker's grant of summary judgment to defendants because the doctor had approved the use of those restraints).   While the Court agrees that deference is afforded to the Rushville administrators, their decisions must still be within accepted professional judgment and supported by legitimate interests in security.

The Court acknowledges that, in general, use of the black box or restraints on the residents at Rushville presents no significant federal issue.   Miller v. Dobier, 634 F.3d 412, 414-15 (7th Cir. 2011)(no constitutionally protected liberty interest in avoiding the "black box" restraints); Thielman v. Leean, 282 F.3d 478, 483-84 (7th Cir. 2002)(addition of waist belt and leg chains to handcuffs during transport of detained person did not implicate Constitution).   However, application of Rushville's restraint policy in a manner which causes injury, pain, or unnecessary humiliation does present a significant legal issue which this Court has addressed more than once. These types of claims will nearly always involve minimal damages.   Denying an attorney's fee award to the rare prevailing plaintiff on this claim effectively turns a blind eye to the situation.   See Hyde v. Small, 123 F.3d 583, 595 (7th Cir. 1997)(if fees were not awarded because the verdict was small and the case broke no new ground, then unconstitutional conduct would be, "as a practical matter, beyond the reach of

the law.").1

The claim against Lay and Wessel was not frivolous.   In fact, the Court's review of the evidence at the summary judgment stage suggested that the claim against Lay and Wessel was fairly strong.   Plaintiff had objective evidence that his hand restraints could have been temporarily removed for a few minutes while Plaintiff used the restroom at the Courthouse without presenting any security risk.   If Defendants had preferred to avoid a fee award, they could have made a token settlement offer after the case survived summary judgment, before counsel was even appointed.   Fed. R. Civ. P. 68.

In short, the Court is of the opinion that Rushville's application of its restraint policies does present a significant legal issue beyond just this case and does help achieve an important public goal of humane treatment of persons detained at the Rushville Treatment and Detention Center.   The Court therefore concludes that a "reasonable attorney's fee" in this

---

1 In Hyde, on remand the District Court awarded $11,500 for the attorney's fee on a false arrest claim in which $500 had been awarded to plaintiff.   However, unlike this case, the plaintiff in Hyde had not asked for a specific amount of damages.

case is an amount greater than zero.

The Court must still determine what amount is a reasonable attorney's fee.   The Court starts by using the "lodestar" method, which means multiplying the reasonable hours worked on the case by a reasonable hourly rate.   <u>Hensley v. Eckerhart</u>, 461 U.S. 424 (1983).   The lodestar amount may then be revised in either direction upon consideration of additional factors such as the degree of success obtained and the public interests affected. <u>Gastineau v. Wright</u>, 592 F.3d 747, 748 (7th Cir. 2010).   "The standard is whether the fees are reasonable in relation to the difficulty, stakes, and outcome of the case."   <u>Id.</u>

The Court agrees with many of Defendants' objections to the reasonableness of the hours spent.   Plaintiff's counsel seeks over $69,000 in fees for 462.5 hours of work.   While Plaintiff's counsel did an outstanding job, and the Court does not doubt that counsel did work that many hours, what is reasonable under § 1988 is a different question.   <u>Farrar</u>, 506 U.S. at 112.   The Court has culled through the entries, striking

amounts that, from a § 1988 viewpoint, are excessive,

insufficiently detailed, duplicative, clerical, or which the Court

believes represents class time conferencing and strategizing.

The Court attaches its review of the time entries to this order.

Based on the Court's review (attached), 184.5 hours were

reasonably expended on Plaintiff's three claims which survived

summary judgment.   However, two of Plaintiff's claims against

other Defendants—both excessive force claims—were weak

from the start and did not succeed at trial.   An attorney's fee

should not be awarded for the unsuccessful claims, though the

Court recognizes that Plaintiff's counsel likely had little choice

but to proceed to trial on all three claims.   Determining how

much time was spent on each claim is not possible.

Accordingly, the Court will assume that the time spent on each

claim was equal and reduce the hours reasonably expended by

two thirds.   Therefore, the Court finds that 61.5 hours were

reasonably expended.

The next step is to determine the reasonable hourly rate.

Plaintiff attaches affidavits of experienced lawyers who aver that

an hourly rate for a new associate on a case like this would be from $100-$200 dollars.   Defendants assail the affidavits but offer no contrary evidence on the applicable market rate.

The current hourly rate for criminal defense attorneys appointed pursuant to the Criminal Justice Act is $110.00. (www.ilcd.uscourts.gov/attorney/CJA attorney forms/rate as of 9/1/13 is $110).   CJA attorneys are required to have second-chaired at least two trials and typically have been practicing law for several years.   Additionally, in this Court's experience the hourly rate for experienced insurance defense counsel is currently $110.

Further, in Missouri v. Jenkins by Agyei, 491 U.S. 274 (1989), law students were compensated at an hourly rate of $35.   Thirty-five dollars in 1989 is the rough equivalent of $66.00 in today's dollars, according to the Consumer Price Index Calculator.   http://data.bls.gov.   On the other hand, some district courts have compensated law student work at $105.   Parish v. City of Elkhart, 2011 WL 1360810 (N.D. Ill. 2011).

The law students in this case did a yeoman's job. Nonetheless, the law students had no experience practicing law before taking this case, nor had they passed the bar.   The Court therefore the Court concludes that an hourly rate of $100-200 is too high.   In the Court's opinion, an hourly rate of $80 is closer to the market rate for the law students' services. *See also* Wirtz v. City of South Bend, Ind., 2012 WL 589454 (N.D. Ind. 2012)($90 hourly rate for intern).

Sixty-one and 1/2 hours multiplied by an hourly rate of $80 is $4,920.00.   Plaintiff also seeks reimbursement for travel, parking, and hotel costs in the amount of $678.28 ($272.16 for three nights in a hotel, $35.72 for parking, $370.74 for mileage).   These expenses are recoverable as part of the attorney's fee under § 1988, not as a statutory cost under 28 U.S.C. § 1920.   See Heiar v. Crawford County, 746 F.2d 1190, 1203 (7th Cir. 1984) ("expenses of litigation that are distinct from either statutory costs or the costs of the lawyer's time reflected in his hourly billing rates expenses for such things as postage, long distance calls, xeroxing, travel, paralegals, and

expert witnesses are part of the reasonable attorney's fee allowed by the Civil Rights Attorney's Fees Awards Act.")(*citing* Henry v. Webermeier, 738 F.2d 188, 191 192 (7th Cir.1984)). The Court includes the $678.28 as part of the reasonable attorney's fee.

In sum, the Court finds that a reasonable attorney's fee in relation to Plaintiff's success is $5,598.28 ($4,920 for the time spent by Plaintiff's counsel and $678.28 for travel, hotel, and parking).

### Statutory Costs

Remaining are Plaintiff's claims for reimbursement of $16.45 for copies of the photographs of the restroom at the Madison County Courthouse and $19.80 for two outfits for Plaintiff purchased from Goodwill.   The first is taxable as a cost under 28 U.S.C. § 1920; the second is not.   Accordingly, $16.45 in costs is allowed.

IT IS THEREFORE ORDERED:

1)   The motion by Defendants Lay and Wessel for judgment as a matter of law or for a new trial is denied (d/e 157).

2)   Plaintiff's motions for a reasonable attorney's fee award are

granted in part (d/e 154, 164).   Fees for Plaintiff's counsel are awarded in the amount of $4,920.00.   Non-taxable expenses are awarded in the amount of $678.28.   Accordingly, the total amount awarded as a reasonable attorney's fee under 42 U.S.C. § 1988 is $5,598.28.

3)   Plaintiff's motion for costs is granted in part (d/e 156). Costs of $16.45 are taxed against Defendants Lay and Wessel under 28 U.S.C. § 1920.

4)   Defendants Lay and Wessel are directed to pay $5,614.73 directly to the University of Illinois College of Law Federal Civil Rights Clinic ($5,598.28 for the reasonable attorney's fee and $16.45 for taxable costs).   Payment arrangements may be made through Andrew Bequette, supervisor of the Clinic.

**4)   The clerk is directed to file an amended judgment to reflect the award of costs and the attorney's fee.**

ENTERED:        September 27, 2013

FOR THE COURT:

<u>    s/Sue E. Myerscough    </u>
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE